395 So.2d 991 (1981)
SEARS, ROEBUCK & COMPANY, INC.
v.
HAVEN HILLS FARM, INC.
79-438.
Supreme Court of Alabama.
March 12, 1981.
*993 Paul W. Brock and Ronald L. Davis of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for appellant.
John T. Crowder, Jr. of Cunningham, Bounds, Byrd, Yance & Crowder, Mobile, for appellee.
PER CURIAM.
The single issue presented is whether the mere fact that a motor vehicle tire blows out proves the tire is a defective product under the Alabama Extended Manufacturer's Liability Doctrine. We hold that an affirmative response, under the attendant circumstances shown by the proof of record in the instant case, would be an impermissible expansion of the standards for liability of manufacturers, suppliers, or sellers of products under Alabama law.

FACTS
Haven Hills Farm, Inc., purchased a tire from Sears, Roebuck & Co., for a truck used in the transportation of eggs sold in its wholesale egg business. Haven Hills purchases eggs from Cal-Maine Foods near Jackson, Mississippi, and transports them to Mobile, Alabama, for distribution to various food stores. The company has only the one large truck, for use on which the tire was bought, for shipping the eggs to Mobile; although it has several vans utilized in the distribution of the eggs. Only one person, William Hicks, ever drove the truck. On one such return to Mobile from picking up eggs in Mississippi, the left front tire on the truck blew out, causing the truck to turn on its side, destroying the eggs. The evidence shows that the tire had been driven approximately 30,000 miles.
Haven Hills filed suit against Sears, alleging that: 1) under the Alabama Extended Manufacturer's Liability Doctrine, Sears sold or distributed the tire in a defective condition unreasonably dangerous to consumers or other persons likely to be exposed to potential hazard; and 2) Sears breached its implied warranty of merchantability. Haven Hills sought an award for property damages and lost profits. On motion, the claim for lost profits was denied.
In its answer, Sears denied the material allegations and affirmatively pleaded that Haven Hills: 1) was itself guilty of negligence which proximately contributed to its injuries and damages; and 2) caused or allowed the truck to be misused. Sears' motions for directed verdict were denied and the jury returned a $21,856.88 verdict in favor of Haven Hills. The trial court overruled Sears' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
We hold that the trial court erred in denying Defendant's motion for a directed verdict based upon Plaintiff's failure to meet its burden of proving its allegation of the tire's defective condition at the time of its sale by Sears. Therefore, we reverse and remand for a new trial.

ALABAMA MANUFACTURER'S LIABILITY DOCTRINE
Although earlier Alabama cases had employed the "manufacturer's liability doctrine," rejecting the privity of contract requisite in warranty claims, Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976), and Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976), refined the cause of action to its presently recognized status and labeled it the Alabama Extended Manufacturer's Liability Doctrine. Together, Casrell and Atkins changed products liability cases in this State from the pure form of negligence theory to a modified version of the Restatement (Second) of Torts, § 402A (1965), strict liability theory, premising liability on proof that the injured ultimate user:
*994 1) suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) Showing these elements, the plaintiff has proved a prima facie case although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.
Casrell, at 132-133; Atkins, at 141; Restatement (Second) of Torts, § 402A (1965).
Additionally, AEMLD allows defendants to escape liability by proving certain permitted legal defenses such as contributory negligence, assumption of risk and lack of causal relationship. Moreover, this Court rejects the no-fault concept embodied in the Restatement (Second) of Torts, and notes that fault is supplied by the defendant's selling a product in a defective condition, unlike before, when fault was shown by the careless conduct of the defendant, i. e., his failure to exercise due care in the manufacture, design, sale or placement of the product into the stream of commerce. Emphasis is now shifted from the Defendant's performance to the product's performance.
It is precisely because of these unique features, allowing certain affirmative defenses, retaining the fault concept, and preserving the distinctions between tort and contract remedies, that Alabama modifies the Restatement (Second) of Torts, § 402A. Although this hybrid form of strict liability in products liability cases still retains vestiges endemic to the negligence cause of action, it substantially opened the way for injured ultimate users to sue the manufacturer, supplier or retailer for injuries proximately caused by a defective, unreasonably dangerous, unaltered product when put to its intended, usual and customary use.

PLAINTIFF'S BURDEN TO PROVE DEFECTIVENESS
With this as the historical background of AEMLD, the threshold inquiries then become: 1) What is the definition of a "defective" product? 2) What is Plaintiff's burden of proof? and 3) Has Plaintiff met that burden under the proof of record before us?
This Court, defining a defect, has borrowed from two separate legal authorities. The Uniform Commercial Code, § 2-314, speaks in terms of unmerchantability as evidence of product inadequacy, i. e., that the goods are not fit for the ordinary purposes for which such goods are expected to be used. The Restatement (Second) of Torts, § 402A, speaks in terms of "unreasonably dangerous." Combining these two principles, and using each in aid of the other, Casrell, at p. 133, states:
"defect" is that which renders a product "unreasonably dangerous," i. e., not fit for its intended purpose, and ... all "defective" products are covered.
* * * * * *
"Defective" is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment g. of the Restatement says defective condition applies when, at the time the product leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer. See, also, Atkins, at p. 142, under that portion of the opinion entitled "Defective Condition"; and Restatement (Second) of Torts, § 402A, Comment i.
Accordingly, proof of the specific defect, i. e., the exact act, omission, process, construction, etc., resulting in the product's failing its intended use, is not required. "If a product is unreasonably dangerous, it is necessarily defective, and the consumer should not be required to prove defectiveness as a separate matter." Casrell, at 131.
*995 Before applying the definition of defect to the facts at issue, we now address the second inquiry as to the Plaintiff's requisite proof to establish a prima facie case. Liability is not established merely by showing that the product failed in furthering or performing its intended use. The Plaintiff must prove that the product was substantially unaltered when used by him and must also prove causation in fact, including proof that the defect caused the injury and that the defect is traceable to the Defendant. 2 Frumer-Friedman, Products Liability, § 16A[4][e][i] (1980).
It is not enough to show, for example, that Sears sold the tire and that Haven Hills was injured.
The fact of an injury, of course, does not establish the presence of a defect. Thus, recovery cannot be predicated on injury alone, for linking liability to injury rather than to proof that a product is defective creates absolute rather than strict liability.
Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 289 (5th Cir. 1975). Necessarily, then, this test is met only by a showing that the product's failure of performance is causally related in fact to the product's defective condition at the time of its sale.
The evidence and testimony likely to prove the defectthat which rendered the product not fit for its anticipated useand the defect's link to the Defendant, depend upon the nature of the facts; but, ordinarily, expert testimony is required because of the complex and technical nature of the commodity. See, e. g., Edwards v. Sears, Roebuck & Co., supra; Smith v. Uniroyal, Inc., 420 F.2d 438 (7th Cir. 1970); Gherna v. Ford Motor Co., 246 Cal.App.2d 639, 55 Cal. Rptr. 94 (1966); Baker v. Ford Motor Co., 501 S.W.2d 11 (Mo.1973); Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 470 P.2d 135 (1970).
This does not mean, however, that experts are always required, but simply that they are usually essential to produce evidence from which lay jurors may reasonably infer that the defective condition of the product is the cause of the product's failure and plaintiff's resultant injury. If such an inference may be reasonably made from the product's failure of performance under all the attendant circumstances absent expert testimony, a prima facie case is nonetheless established.
At this juncture, it is important to note, again, that it is not negligence in the traditional sense (i. e., lack of due care in the product's manufacture or design) that is required; rather, the Plaintiff has proved a prima facie case where the evidence raises a reasonable inference from which the fact finder may rationally conclude that plaintiff's injuries and damages resulted proximately from the product's failure of performance causally related to its defective condition. See, Atkins, at 140. The burden of proof rests with the injured consumer to prove that the product left the defendant's control in an unreasonably dangerous condition not fit for its expected use, and that which rendered the product in such an unfit condition in fact caused the injury. The plaintiff's burden will not be sustained without evidence to support the conclusion that the product is defective. Restatement (Second) of Torts, § 402A, Comment g.

ADEQUACY OF PLAINTIFF'S PROOF
The evidence of record before us shows only that a 4½ month old tire, driven approximately 30,000 miles, blew out while mounted on a truck carrying 11,862 dozen eggs on a paved highway under normal weather conditions. To permit an inference of defect from such meager evidence would be to allow the fact finder to indulge in mere conjecture and speculation. While the gravamen of the injured consumer's claim of culpability is shifted from the Defendant's lack of due care in the product's manufacture or design to its sale in a defective condition, the traditional burden of proof standards applicable to tort cases, generally, remain intact. The burden of proof is not shifted to Defendant until, under traditional standards, Plaintiff has established a prima facie case.
*996 The rule that mere failure of a product does not presuppose the existence of a defect is accepted in other jurisdictions. In Shramek v. General Motors Corp., Chevrolet M. Div., 69 Ill.App.2d 72, 77-78, 216 N.E.2d 244, 247 (1966), the Court stated:
Whether the charge is breach of implied warranty, negligence or the strict tort liability ... the cornerstone of plaintiff's cause of action is the existence of a defect in the tire at the time it left the control of the manufacturer or seller. Without this proof his case must fall.
* * * * * *
The mere fact of a tire blowout does not demonstrate the manufacturer's negligence, nor tend to establish that the tire was defective. Blowouts can be attributed to myriad causes, including not only the care with which the tires are maintained, but the conditions of the roads over which they are driven and the happenstance striking of damaging objects.

CONCLUSION
Having concluded that the judgment below must be reversed and remanded for a new trial, we pretermit consideration of other points raised by Appellant. Neither will we indulge in comments concerning the state of the record regarding proof of affirmative defenses by Appellant. Reversal is based on Plaintiff's failure to prove a prima facie case: i. e., the failure of the evidence to furnish a reasonable inference of the tire's defective condition; thus, the trial court erred in denying Defendant's motion for a directed verdict. Ordinarily, where we conclude, as we do here, that Appellant was entitled to a directed verdict in its favor it would be appropriate to enter judgment notwithstanding the verdict in behalf of Appellant or direct that it be entered by the trial court. This we will not do for the reason that this case is the first time that a full review by us has been made of the burden and standards of proof necessary to establish a prima facie case under the Alabama Extended Manufacturers Liability Doctrine.
Our holding, of course, is not intended as a restriction upon the prerogative of the trial court, in the exercise of its sound discretion, to reserve its ruling on a motion for a directed verdict until the close of all the evidence. Nor is it intended to limit the trial court's discretion, in a given case of doubtful resolution, to submit the triable issues to a jury with the view of further judicial consideration of such grounds as may be presented in a post-judgment motion in the event the jury's resolution of the issues appears to be erroneous under appropriate standards of post-judgment review.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, FAULKNER, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (Concurring specially):
I concur specially to emphasize that this is a classical failure of proof case. It is not a weight of the evidence case. Our reversal is based on Plaintiff's failure to prove a prima facie case and not its failure to negate all of the possible contributing or sole causes interposed as defenses nor on our finding that Defendant established one or more of its affirmative defenses.
In so holding, however, I would also emphasize that it is not every case, under all circumstances, that will require expert testimony to make out a prima facie case. Unquestionably, there are many products whose mere failure of performance, even after long and continuous use, is sufficient, in and of itself, to raise a reasonable inference of its defective condition. In extreme cases of limited use under highly controlled conditions, the blowout of a tire may be ample evidence to meet the requisite prima facie test; but, here, the jury could not be left to the bare exercise of its imagination in the discharge of its fact finding prerogative to determine the cause of the tire's failure.