The plaintiff Richard Taylor appeals from a judgment entered on a jury verdict in favor of the defendants General Motors Corporation ("GM") and Bay Chevrolet, Inc. Although Taylor's wife and children were also plaintiffs and also appeal, we shall refer only to Taylor as the plaintiff/appellant, for simplicity's sake. Similarly, we shall refer only to GM as the defendant/appellee, although the defendant Bay Chevrolet, Inc., is also an appellee. Taylor sought to recover damages for injuries he sustained when the automobile he was driving ran off the road. Alleging that a defective condition in his 1988 Chevrolet Sprint caused the wreck, Taylor proceeded against GM under the Alabama Extended Manufacturer's Liability Doctrine and a theory of breach of implied warranty of merchantability.
Taylor raises the following issues: (1) Whether the circuit court adequately instructed the jury on the meaning of the term "defective," as that term is used in our formulation of the AEMLD; (2) whether the circuit court erred by refusing Taylor's requested jury instruction stating that Alabama law does not require proof of a specific defect in order to sustain an AEMLD claim; (3) whether the circuit court erred by excluding from evidence GM reports related to 14 other incidents involving Chevrolet Sprint automobiles; and (4) whether the circuit court erred by excluding GM records pertaining to the warranty replacement on other Sprints of parts identical to those Taylor alleges were defective in his vehicle.
On May 20, 1990, Taylor was driving the Sprint along Government Boulevard in Mobile, and his three children were passengers in the vehicle. They were travelling west, just past Interstate Highway 65, when the car suddenly veered right and went off the roadway. Witnesses testified that they heard a sharp bang before the car left the *Page 200 
road; after leaving the road, the car struck a concrete marker, became airborne, and then landed near the top of an embankment leading to Montlimar Creek. The Sprint rolled over as it went down the hill, and it came to rest upright in the water of Montlimar Creek. Taylor's spinal cord was crushed in the accident and he was paralyzed from the chest down. The children were also hurt, but their injuries were relatively minor.
On May 14, 1992, Taylor filed a complaint against GM and Bay Chevrolet, Inc. — the dealership from which Taylor had purchased the Sprint — alleging that a defective torque rod bracket and a defective transmission mount had caused the accident. Taylor later added Bridgestone-Firestone, Inc., as a defendant, under a theory of negligent maintenance or negligent repair of the vehicle after purchase. Bridgestone-Firestone settled with Taylor, and the circuit court dismissed it from the action; it is not a party to this appeal.
At trial, Taylor sought to prove that the sharp bang heard by witnesses was the sound of the Sprint's aluminum torque rod bracket fracturing. His expert witnesses testified that the torque rod bracket, as well as the left-side transmission mount, failed because of fatigue. According to Taylor's experts, the failure of these components caused a phenomenon called "torque steer," which they said would cause the vehicle to veer to the right. GM rebutted this evidence with expert testimony indicating that the torque rod bracket and transmission mount actually broke during the impact of the accident, not as a result of fatigue. GM's experts further testified that, even if those parts had failed, excessive or uncontrollable torque steer would not have occurred as a result.
The jury returned a verdict for GM, and the circuit court entered a judgment on that verdict. Taylor moved for a new trial, but the court denied his motion.
Taylor contends that the circuit court failed to adequately instruct the jury on the definition of "defect" or "defective" under the AEMLD. Specifically, two of his requested jury charges would have instructed the jury that " '[d]efective' means the product does not meet the reasonable expectations of an ordinary consumer as to its safety." The circuit court declined to give the requested charges and, instead, instructed the jury that "defective" means "unreasonably dangerous." This definition comes directly from Instruction 32.12, AlabamaPattern Jury Instructions (Civil) (2d ed. 1993).
Taylor asks this Court to rule that, by itself, an instruction that "defective" means "unreasonably dangerous" is insufficient. In support of this argument, he cites language in both Casrell v. Altec Industries, Inc., 335 So.2d 128, 133
(Ala. 1976), and General Motors Corp. v. Edwards,482 So.2d 1176, 1183 (Ala. 1985), interpreting the word "defective," as it is used in this Court's formulation of the AEMLD, to mean "that the product does not meet the reasonable expectations of an ordinary customer as to its safety."
While this Court has so interpreted the word "defective" in AEMLD cases, the mere fact that particular language appears in an opinion of this Court does not necessarily make that language appropriate for a jury instruction. Alabama Power Co.v. Tatum, 293 Ala. 500, 504, 306 So.2d 251, 254 (1975). In interpreting "defect" or "defective" in the context of AEMLD claims, this Court has employed various language when addressing particular cases. The notes following A.P.J.I.
Instruction 32.12 — which itself defines "defective" simply as "unreasonably dangerous" — point out the myriad of phrases used by this Court:
 "The Alabama Supreme Court has not selected one specific definition of 'defect.' Defective may also mean 'not reasonably safe when applied to its intended use in the usual and customary manner'; 'unreasonably dangerous, that is, dangerous to an extent beyond that which is contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics'; 'not reasonably safe'; 'unreasonably dangerous, i.e., not fit for its intended purpose'; 'does not meet the reasonable expectations of an ordinary consumer as to its safety'; 'so dangerous that a reasonable man would not sell the product if he knew *Page 201 
of the risks involved'; 'unsafe when put to its intended use'; 'dangerously unsafe chattel'; 'not reasonably safe'; 'created an unreasonable risk of harm'; 'exposed expected users of a product not reasonably safe to unreasonable risks'; 'dangerously unsafe'; 'not reasonably safe when used for its intended purpose.' "
Although the notes following the pattern instruction present this litany of variant phrases, they do not suggest when some definition besides "unreasonably dangerous" should be employed.
In reviewing a jury instruction to determine if it correctly and adequately sets forth the applicable law, this Court must read and consider the charge as a whole. Volkswagen of America,Inc. v. Marinelli, 628 So.2d 378, 384-85 (Ala. 1993). The circuit court must give a charge that properly presents to the jury a party's theory of the case, and if the circuit court fails to do so, its failure is reversible error. Id. at 384;Alabama Farm Bureau Mut. Ins. Service, Inc. v. JerichoPlantation, Inc., 481 So.2d 343, 344 (Ala. 1985).
The circuit court's jury charge properly instructed the jury that "defective" means "unreasonably dangerous." That the circuit court refused to charge the jury on other definitions of "defective" in no manner compromised Taylor's right to have his theory presented to the jury by a proper instruction. His entire claim could be distilled to the argument that his Sprint was unreasonably dangerous because of a likelihood that the torque rod bracket and the transmission mount would fail. Even though Taylor was not given the exact charge he requested, the circuit court's oral charge substantially covered the same principles as the requested charge. Crown Life Ins. Co. v.Smith, 657 So.2d 821, 825 (Ala. 1994); Volkswagen at 385; ConeBuilders, Inc. v. Kulesus, 585 So.2d 1284, 1290 (Ala. 1991). Furthermore, Taylor has not convincingly argued how the giving of the requested charge might have led to a different jury verdict.
The "unreasonably dangerous" definition of "defective" contained in A.P.J.I. Instruction 32.12 goes to the heart of most products liability claims and will be adequate for the majority of claims pursued under an AEMLD theory. Thus, no particular alternative definition of "defective" is necessarily due to be given in a jury charge. Were we to require a circuit court to give an instruction setting out all of the possible definitions of "defective," or even a set of particular definitions chosen by a plaintiff, the charge in an AEMLD case would rapidly become cumbersome and confusing to a jury. While there may be certain plaintiffs' theories that will require providing alternative or additional definitions of "defective," those cases should be the exception rather than the rule. Therefore, we believe it is best to require only that the circuit court give an instruction that properly presents a party's theory to the jury. Volkswagen at 384; JerichoPlantation at 344. For most AEMLD actions, A.P.J.I. Instruction 32.12 will satisfy that requirement. Taylor has made no showing that the facts of his case called for some different or additional definitions.
For the foregoing reasons, there was no error in refusing the plaintiff's requested charge.
Taylor also argues that the circuit court erred by failing to give a requested charge instructing the jury that Alabama law does not require proof of a specific defect in order to sustain an AEMLD claim. In part, the plaintiff's requested charge number 11 stated:
 "The law does not require that there be proof of a specific defect resulting in the failure of the product during intended use. If you find that the Sprint was unreasonably dangerous or did not meet the reasonable expectations of an ordinary consumer as to its safety, then the Sprint is necessarily defective and the Taylors are not required to prove defectiveness as a separate matter."
This requested charge number 11, like those charges pertaining to the definition of "defective," pulls language directly from previous opinions of this Court, particularlyCasrell and Sears, Roebuck Co. v. Haven Hills Farm, Inc.,395 So.2d 991 (Ala. 1981). Again, however, Taylor's argument only further proves the propriety of the rule that even *Page 202 
though language in a requested charge is derived from an opinion of this Court it is not necessarily appropriate for a jury instruction. Tatum, 293 Ala. at 504, 306 So.2d at 254.
The Casrell Court held that "[i]f a product is unreasonably dangerous, it is necessarily defective, and the consumer should not be required to prove defectiveness as a separate matter." 335 So.2d at 131. Taken alone, this excerpt might lead to the conclusion that a plaintiff in an AEMLD action need not prove the existence of a specific defective condition as a prerequisite to recovering damages. However, a closer examination of this statement in the proper context shows that such a conclusion would be mistaken.
In Casrell, where this Court first adopted a hybrid form of liability in defective product cases, the language now quoted by Taylor is found in the context of differentiating between traditional negligence principles and the doctrine of strict liability in tort. There, this Court stated:
 "The only real difference between strict tort liability and the traditional negligence theory in products liability cases is that those courts which have adopted the rule of strict liability look to the dangerous characteristics of the end product, rather than the methods or processes by which it was produced. This represents a shift in emphasis from the manufacturer's, or seller's, conduct to the performance of his product. However, the results are the same, viz., the defendants must pay the consequences of placing an unreasonably dangerous or defective product on the market. If a product is unreasonably dangerous, it is necessarily defective, and the consumer should not be required to prove defectiveness as a separate matter."
Casrell at 131.
In Sears, the Court reiterated the language now relied on by Taylor, but prefaced it by stating that "proof of the specific defect, i.e., the exact act, omission, process, construction,etc., resulting in the product's failing its intended use, is not required." 395 So.2d at 994 (emphasis added). Sears also cited Restatement (Second) of Torts, § 402A, cmt. g (1965), to describe the plaintiff's burden of proof in products liability cases:
 "The burden of proof rests with the injured consumer to prove that the product left the defendant's control in an unreasonably dangerous condition not fit for its expected use, and that [the thing] which rendered the product in such an unfit condition in fact caused the injury. The plaintiff's burden will not be sustained without evidence to support the conclusion that the product is defective."
395 So.2d at 995 (emphasis added).
In its proper context, the language Taylor has pulled fromCasrell and Sears was clearly meant to relieve AEMLD plaintiffs only of the burden of proving the specific negligent conduct that ultimately caused a defective condition in a manufacturer's product. In this case, for example, Taylor would not have to prove that the torque rod bracket and the transmission mount were negligently designed by a GM engineer or that a GM worker negligently installed these components in the Sprint. Nonetheless, Taylor still must prove the existence of a defective condition and prove that the defect proximately caused his injuries.
In an effort to carry his burden of proof, Taylor offered the testimony of experts to show that the torque rod bracket and the transmission mount were defective because of a likelihood of fatigue that would cause the parts to break. If the jury rejected this evidence, his case would necessarily fail for lack of proving a defective condition in the Sprint. Nonetheless, Taylor's requested instruction, which would have told the jury that he need not prove a specific defect, could have allowed the jury to infer the existence of a defect simply by virtue of the car's inexplicably running off the road.
However, allowing a jury to infer that a product is defective solely from the fact that it failed in some manner does not square with our holding in Sears, where the Court held that the AEMLD requires "a showing that the product's failure of performance is causally related in fact to the product's defective condition at the time of its sale." 395 So.2d at 995. The Sears Court held that the blowout of a four-and-a-half-month-old tire, which had been driven approximately 30,000 *Page 203 
miles, was not sufficient evidence to establish that there had been a defect in the tire. 395 So.2d at 995-96. Similarly, we hold that evidence of Taylor's veering from the roadway in his two-year-old Sprint, which had been driven approximately 36,000 miles, is not sufficient evidence, under the AEMLD, to establish a defect in the vehicle. The Sears Court noted that there are myriad reasons for tire failure; we note that there are myriad reasons why vehicles veer from the road, including driver error and adverse highway conditions.
Therefore, after considering the circuit court's entire charge to the jury and considering the facts of this particular case, we find no reversible error in the court's refusing the requested charge.
Taylor also asserts that the circuit court erred in refusing to admit into evidence GM "Preliminary Investigation Reports" related to 14 other crashes involving Sprint vehicles. He argues that the reports should have been admitted because, he says, they demonstrate that other similar accidents had occurred involving drivers' sudden loss of control of similar Sprints. The circuit court ruled the reports inadmissible because the incidents described in them were not substantially similar to Taylor's accident.
Taylor cites General Motors Corp. v. Johnston, 592 So.2d 1054
(Ala. 1992), to support his claim that the reports should have been admitted. In that case, Johnston's pickup truck stalled in an intersection and was struck by an oncoming tractor-trailer truck. In an action brought under the AEMLD, Johnston sought to establish that a defective memory chip in the pickup's fuel delivery system had caused the accident. Johnston offered, as evidence of a defect in the fuel delivery system, 268 GM reports related to similar accidents; they were admitted into evidence. This Court held that the trial court had not abused its discretion in admitting those reports, because a majority of the reports specifically dealt with fuel-delivery-system components in engines identical to the one in the plaintiff's pickup.
However, our holding in Johnston does not require the reversal of the judgment in the instant case. Rulings on the admissibility of evidence under the "substantially similar" standard must be considered on a case-by-case basis. The admissibility of such evidence is within the discretion of the trial court, and the court's ruling will not be reversed absent an abuse of that discretion. Johnston at 1058-59.
Although the reports offered by Taylor related to incidents in which drivers lost control of their Sprint automobiles and ran off the road, the similarities between those incidents and Taylor's own accident end there. Of the 14 reports, none mentioned the failure of a torque rod bracket or a transmission mount, and none cited torque steer as the cause of the crash. Instead, the reports attributed the incidents to a variety of automotive malfunctions, ranging from brake failure to the loss of power steering, but not including a problem such as Taylor says caused his accident. The circuit court was justified in ruling that the offered reports indicated that the other incidents were not substantially similar to Taylor's accident. Therefore, the court did not abuse its discretion in excluding the reports.
Finally, Taylor argues that the circuit court erred by excluding evidence regarding the warranty replacement of parts on Sprint vehicles identical to the vehicle owned by Taylor. The documents offered in evidence included the number of torque rods, torque rod brackets, and transmission mounts that GM had replaced under warranty on 1985- to 1988-model Sprints. Taylor contends that the documents were relevant to show that other Sprints had the same defective components because they were replaced under warranty. However, the circuit court refused to admit the documents, because Taylor could not establish a relationship between the number of parts replaced and the number of parts that were actually defective. According to GM, this issue was of critical concern because, it said, nondefective parts were often replaced in conjunction with other work performed on a vehicle.
Evidence is relevant when it has some tendency to shed light on the inquiry at issue. Baker v. Merry-Go-Round Roller Rink,Inc., 537 So.2d 1, 2 (Ala. 1988); see also *Page 204 
Rule 401, Ala. R. Evid.; C. Gamble, McElroy's Alabama Evidence
§ 21.01 (5th ed. 1996). Because the number of parts replaced under warranty has some tendency to lead to the inference that at least some of those parts were in fact defective, the documents offered by Taylor were relevant and the circuit court could have properly ruled them admissible. However, the fact that the evidence was relevant and could have been admitted is not dispositive, because the circuit court has the discretion to exclude relevant evidence that is speculative or of little probative value. Ryan v. Acuff, 435 So.2d 1244, 1247
(Ala. 1983); Collins v. Burns, 666 So.2d 530, 533
(Ala.Civ.App. 1995). Taylor could not assure the circuit court of any relationship between the overall number of parts replaced and the number of parts that were actually defective. Consequently, any probative value of the evidence was speculative at best, and the circuit court therefore did not abuse its discretion by refusing to admit the documents. Therefore, there was no error in the circuit court's ruling.
For the foregoing reasons, we affirm the judgment of the circuit court.
AFFIRMED.
HOOPER, C. J., and HOUSTON, COOK and SEE, JJ., concur.