[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 3, 2007
THOMAS K. KAHN
CLERK

No. 06-14330

D. C. Docket No. 04-00634 CV-CG-B

RICHARD PHILLIPS,
DEDA PHILLIPS,

                                        Plaintiffs-Appellants,

        versus

AMERICAN HONDA MOTOR CO., INC.,
HONDA MOTOR COMPANY, LTD.,
HONDA R&D AMERICAS, INC.,
HONDA OF AMERICA MANUFACTURING, INC.,
HONDA OF NORTH AMERICA, INC.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(July 3, 2007)**

Before EDMONDSON, Chief Judge, HULL, Circuit Judge and FORRESTER,[*] District Judge.

PER CURIAM:

Plaintiff-Appellant Richard Phillips ("Plaintiff") filed this product liability suit against Defendants-Appellees American Honda Motor Co., Inc., Honda Motor Co., Ltd., Honda R&D Americas, Inc., Honda of America Mfg., Inc., and Honda North America, Inc. (collectively, "Defendants"), alleging that a Honda All-Terrain Vehicle ("ATV") was unreasonably dangerous. After excluding some testimony from Plaintiff's expert and treating physicians, the district court granted summary judgment in favor of Defendants. Plaintiff appealed. We affirm.

I. Background

This case is a product liability action arising under Alabama law. Plaintiff has type-2 diabetes. As a result, he has no sensation in his feet and cannot feel temperature changes around his feet or ankles.

On 7 September 2001, Plaintiff used an ATV to pull a lawn mower around his farm. He mowed his field for about an hour and a half while wearing work

[*]Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

boots and thick cotton socks. Plaintiff alleges that when he arrived home and removed his boots, he discovered burns on his feet. Plaintiff filed this suit against Defendants, alleging that high temperatures inside the footwells made the ATV unreasonably dangerous and that the high temperatures caused his injuries.

Defendants moved for summary judgment. In opposing summary judgment, Plaintiff relied principally on testimony from Mike Burleson, an expert in ATV design and safety. After some preliminary testing, Burleson conducted tests on the Honda ATV in July and September 2003. In both tests, he placed thermocouples -- temperature measuring probes -- on the ankles of a dummy. He covered the ankles and heels with socks and boots like the ones Plaintiff wore on the date of the alleged accident; he also placed thermocouples on the outside of the boots at the ankles. He then placed the dummy on the Honda ATV, hooked the ATV to a similar mower, and operated the ATV for a similar time. The tests were conducted in an open environment with wind and fluctuating temperatures.

During the July test, Burleson also tested a different ATV to determine whether a safer, practical alternative design existed. The other ATV was an Arctic Cat 400 ATV with a water-cooled engine.[1] This ATV was tested in the same way the Honda ATV was tested.

---

[1] The Honda ATV has an air-cooled engine.

On the basis of these tests, Burleson concluded that the Honda ATV was unreasonably dangerous. His data for the Honda ATV showed that temperatures -- at least for some time -- inside the boot exceeded the temperature that causes burns. Burleson acknowledged that a person with sensation in his feet could avoid injury by simply moving his feet out of harm's way in response to the high temperatures. But he said the Honda ATV gave no warning indication to a person like Plaintiff -- with no sensation in his feet -- when the temperatures became dangerously high. Burleson also opined that the Arctic Cat ATV provided a viable alternative design that could have prevented or reduced Plaintiff's injury. Burleson's data for the Arctic Cat ATV from the July test purported to show temperatures inside the boot that were insufficient to cause burns.

The district court excluded Burleson's testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S. Ct. 2786 (1993), concluding that the testimony was the product of an unreliable methodology. The district court also excluded part of the testimony given by Plaintiff's treating physicians, who testified about causation, because they were not timely disclosed as experts under Fed. R. Civ. P. 26(a)(2)(A).

4

After excluding this testimony, the district court granted summary judgment to Defendants because Plaintiff failed to produce evidence of defect, alternative design, or causation.  Plaintiff appealed.

## II.  Standard of Review

We review a district court's decision to exclude expert testimony under Daubert for abuse of discretion.  Gen. Elec. Co. v. Joiner, 118 S. Ct. 512, 515 (1997).  Under this standard, this Court defers to the district court's ruling unless it is manifestly erroneous.  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003).

We also review for abuse of discretion a decision to exclude expert testimony for failure to disclose as required under Rule 26.  See Prieto v. Malgor, 361 F.3d 1313, 1317 (11th Cir. 2004).  Finally, we review a grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmovant.  Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002).

## III.  Discussion

## A. Burleson's testimony

We first consider the district court's decision to exclude Burleson's testimony under Daubert. Fed. R. Evid. 702 governs the admission of expert testimony in federal court:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 113 S. Ct. at 2795. The proponent of expert testimony bears the burden of showing that the expert's methodology is reliable. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).

In Daubert, the Supreme Court set out four non-exclusive criteria for reliability determinations: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific

6

community." McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing Daubert, 113 S. Ct. at 2796-97). These factors may guide a district court's reliability inquiry, but the district court ultimately has "broad latitude when it decides how to determine reliability." Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1171 (1999). We conclude that the district court did not abuse its discretion in excluding Burleson's testimony.

Substantial evidence supports the district court's conclusion that Burleson's methodology was unreliable. First, he obtained his temperature readings from a plastic dummy reinforced with metal bars rather than from a human being. We recognize he may have had valid safety reasons for using a dummy instead of a human. But Burleson produced no data showing that the conductive and heat-retentive properties of the dummy's foot were similar to those of a human foot. Nor did he show a reliable way to extrapolate from the temperature readings on the dummy's foot to the comparable temperatures on a human foot.

As a result, Burleson provided no reliable link between his data and the facts at issue in the case: the temperature Plaintiff's feet experienced while riding the Honda ATV and the temperature his feet would have experienced had he been riding the Arctic Cat ATV.[2] Thus, the district court was entitled to exclude

---

[2]Burleson's failure to link his temperature readings from the dummy foot to his extrapolations about Plaintiff's injuries presents another Daubert problem: when an expert's data is not directly

7

Burleson's testimony.  See Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005) (affirming exclusion of testimony from expert who extrapolated temperature data from Texas to Georgia and Florida "because storage conditions were supposedly similar and the sites were all in the same basic latitudinal range" and expressing that "[t]ransposition of data based on such conjecture and rough approximation lacks the 'intellectual rigor' required by Daubert").

Second, Burleson's tests failed to control or account for alternative sources of temperature variation.  He conducted the tests outdoors where the ATVs were exposed to fluctuating ambient temperatures.  Burleson's temperature measurements fluctuated significantly throughout his tests,[3] and he testified that this dynamic fluctuation was due to changes in the wind.  In the July test, the starting ambient temperature for the Arctic Cat was ten degrees less than that of the Honda, and the average ambient temperature was lower for the Arctic Cat as well.  Yet despite the constant fluctuation in Burleson's temperature readings, Plaintiff has offered no evidence showing that Burleson accounted for -- or ruled out -- the effect the ambient temperature may have had on the readings.

---

relevant to the matter at issue in a case, the expert's testimony does not assist the trier of fact and is therefore inadmissible under Daubert.  See Daubert, 113 S. Ct. at 2796 (terming this a problem of "fit," and stating that Rule 702 "requires a valid scientific connection to the pertinent inquiry").

[3]For instance, during the July test, the exterior left boot temperature reading at 2625 seconds was 217.18 degrees Fahrenheit.  The next reading -- fifteen seconds later -- was 172.7° F, representing a swing of 44.48 degrees.

Burleson's failure to control or account for the fluctuating ambient temperatures casts serious doubt on the reliability of his methodology.[4]

Third, the temperature readings from the September test revealed an irregularity. For the latter half of the test, the temperature inside the left boot exceeded the temperature outside the left boot even though the outside of the left boot was closer to the source of the heat.[5]

Burleson explained that this irregularity could be due to an accumulation of heat. But this explanation appears internally inconsistent with Burleson's September readings from the right boot, where the outside temperatures were higher than the inside temperatures. And both of the dummy's feet were dressed in the same boots and socks. Furthermore, in the July test, the outside

---

[4]Burleson could have either conducted his tests in a controlled environment where the heat generated by the ATVs would be the only variable or, alternatively, accounted in some way for the variations in ambient conditions to show that the variation did not vitiate his test results. We note that Burleson's methodology was not unreliable simply because his tests were conducted outside. There may have been good reasons for the outdoor tests: for example, it allowed Burleson to simulate the field conditions under which Plaintiff used the Honda ATV. Honda's experts conducted tests in a field for the same reason. But Plaintiff has the burden of proving that Burleson either reliably accounted for the impact of ambient temperature variation or demonstrated that the variation did not vitiate his ultimate conclusions. See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The proponent of expert testimony always bears the burden to show that . . . the methodology by which the expert reach[ed] his conclusions is sufficiently reliable . . . .") (alteration in original) (citation and quotation marks omitted).

[5]Near the end of the test, the temperature inside the left boot reached its maximum of 173.3° F, but at that same time, the temperature outside the left boot was more than 26 degrees lower.

temperatures of the right boot were higher than the inside temperatures.[6]  With no

reliable explanation for the abnormal readings from the September test of the left

boot, the district court was entitled to call Burleson's methodology into question.[7]

Not only did Burleson conduct his tests on a plastic dummy without

providing a reliable link to the facts of this case, his tests reveal significant

uncontrolled and unexplained variables.  Thus, the district court did not abuse its

discretion in excluding Burleson's testimony because his methodology was

unreliable.[8]

---

[6]We cannot compare the September left-boot irregularity to the left-boot temperature readings from the July test because, during that test, the temperature probe inside the left boot malfunctioned.

[7]Plaintiff contends that a court may not exclude expert testimony on the basis of the expert's conclusions and that, when it does, it usurps the role of the jury.  Although the district court's decision to exclude Burleson's testimony was partially, but not wholly, based on its observations of problems and inconsistencies with Burleson's temperature readings -- such as the irregularity of the left boot's interior and exterior temperature during the September test -- the district court was permitted to examine Burleson's data to assess the reliability of his methodology.  See Joiner, 118 S. Ct. at 519 (noting that "conclusions and methodology are not entirely distinct from one another" and saying "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

[8]We recognize that, by itself, an expert's failure to account for every alternative cause will usually "affect the analysis' probativeness, not its admissibility."  See Bazemore v. Friday, 106 S. Ct. 3000, 3008-09 & n.10 (1986) (Brennan, J., joined by all other Members of the Court, concurring in part) (rejecting proposition "that petitioners' regression analyses were unacceptable . . . because they did not include all measurable variables," but noting an exception for "regressions so incomplete as to be inadmissible" (internal quotation marks omitted)).  But Burleson's failure to control for significant alternative sources of temperature variation is especially problematic in this case because the number of trials in Burleson's tests was so low.  He performed only two trials of the Honda ATV -- one in July and one in September -- and neither was seemingly free of problems: during the July test, the thermocouple inside the left boot malfunctioned, and during the September test, the temperature readings inside the left boot were abnormally higher than outside the left boot.  Thus, Burleson performed no error-free test of the Honda ATV that is central to this case.

10

B.  Summary Judgment


After excluding Burleson's testimony, the district court excluded some of the testimony of Plaintiff's treating physicians and then granted summary judgment to Defendants.  Even assuming the district court improperly excluded the treating physician testimony, we conclude that summary judgment was still proper.

Under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), a plaintiff must prove that "(1) the defendant manufacturer sold a defective product, (2) the defect was the cause in fact of the plaintiff's injury and is traceable to the defendant, and (3) the product reached the plaintiff without substantial modification to the condition in which it was sold."  Goree v. Winnebago Indus., Inc., 958 F.2d 1537, 1541 (11th Cir. 1992) (citing Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc., 395 So.2d 991, 994 (Ala. 1981)).

A defective product is a product that is " 'unreasonably dangerous,' i.e., not fit for its intended purpose."  Goree, 958 F.2d at 1541 (quoting Casrell v. Altec Indus., Inc., 335 So.2d 128, 133 (Ala. 1976)).  To show that a product is defective under the AEMLD,

> a plaintiff must prove that a safer, practical, alternative design was
> available to the manufacturer at the time it manufactured the

[product]. The existence of a safer, practical, alternative design must be proved by showing that:

(a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that

(b) . . . the utility of the alternative design outweighed the utility of the design actually used.

Hannah v. Gregg, Bland & Berry, Inc., 840 So.2d 839, 858 (Ala. 2002) (alteration in original) (emphasis omitted) (internal citations and quotation marks omitted).

Aside from Burleson's testimony about the Arctic Cat ATV -- which we have concluded was properly excluded -- Plaintiff produced no evidence of a safer, practical, alternative design.

Plaintiff did argue that a heat shield or fan could have resulted in a safer design, but these arguments were speculative. Plaintiff conducted no tests with a heat shield or fan and produced no evidence that these options would have lowered the temperature in the Honda ATV's footwells. With no evidence of a practical alternative design that would have eliminated or in some way reduced Plaintiff's injuries, the district court properly granted summary judgment under the AEMLD.

## IV. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Defendants.

AFFIRMED.