[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 298 
Dorothy Verchot and persons who were passengers in her motor vehicle on February 22, 1997, sued General Motors Corporation, Jim Burke Automotive, Inc., Tom Williams Buick, Inc., and Quick Oil Change, Inc., seeking compensatory and punitive damages under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). The trial court entered summary *Page 299 
judgments for the defendants. The plaintiffs appealed.
The plaintiffs were involved in an automobile accident on February 22, 1997. On February 19, 1999, they sued, under the AEMLD, alleging that the master cylinder in Verchot's 1991 Buick Park Avenue automobile had contained a defect that caused her brakes to fail and thereby caused the plaintiffs to be involved in an accident. During discovery, two mechanics, Jim Moore and Mike Hill, gave deposition testimony. Both mechanics had inspected Verchot's automobile eight days after the accident. The plaintiffs made the defendants aware that the automobile and master cylinder were no longer available for inspection because Verchot's insurance company had sold the automobile for salvage, but they did provide the defendants with photographs of the automobile that the plaintiffs' counsel had made on the occasion of the inspection by the two mechanics and which showed, among other things, the brake pedal completely depressed to the floorboard. The defendants thereafter moved for a summary judgment. Three separate motions were filed, one by the General Motors Corporation; one by Jim Burke Automotive, Inc., and Tom Williams Buick, Inc.; and one by Quick Oil Change, Inc. Each of the four defendants argued that it was entitled to a summary judgment on the basis that the plaintiffs had allowed the automobile to be disposed of and the plaintiffs could not, without the automobile, prove by substantial evidence that the master cylinder had been defective. Jim Burke Automotive, Inc., and Tom Williams Buick, Inc., also argued that the plaintiffs had shown no causal connection to support a claim against those defendants in their respective capacities as seller (Jim Burke Automotive had sold the vehicle to Verchot on October 18, 1990) and as seller of a replacement master cylinder (Tom Williams Buick had sold the defendant Quick Oil a replacement master cylinder, which Quick Oil had installed on the automobile almost two years before the accident). After receiving evidentiary submissions and holding a hearing, the trial court entered a summary judgment for each of the defendants, without stating a rationale.
Our review of a summary judgment is de novo:
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)." *Page 300 
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
Although the plaintiffs' brief states the issue before this Court in general terms, the arguments they present devolve to the contention that the summary judgments must be reversed because, even if the trial court correctly determined that the plaintiffs improperly disposed of evidence crucial to their claims, the plaintiffs also presented additional and independent substantial evidence that created a genuine issue of material fact as to each element of their claims.[1]
Regarding the relative burdens of proof to be considered in determining whether a party has met the requirements for a summary judgment, we have stated:
 "`If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.]R.Civ.P. ("pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits"). The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial.
 "`If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56 burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim . . .
"`. . . .
 "`The nonmovant may defeat a motion for summary judgment that asserts that the nonmovant has no evidence to establish an essential element of his claim by directing the trial court's attention to evidence of that essential element already in the record, that was ignored or overlooked by the movant, or may submit an affidavit requesting additional time for discovery, in an attempt to obtain some evidence of that essential element of the claim, in accordance with Rule 56(f), [Ala.]R.Civ.P.
 "`If the nonmovant cannot produce sufficient evidence to prove each element of its claim, the movant is entitled to a summary judgment, for a trial would be useless.'"
Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999) (quoting Justice Houston's special concurrence in Berner v. Caldwell, 543 So.2d 686, at 691 (Ala. 1989); concluding that Justice Houston's special concurrence in Berner accurately stated the law; and overruling the main opinion inBerner to the extent that it overruled Lawson State Community College v.First Continental Leasing Corp., 529 So.2d 926 (Ala. 1988)).
We have also discussed at length what must be shown to proceed *Page 301 
with a claim under the AEMLD in the similar context of an alleged defect that caused brake failure:
 "Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purposes and uses. However, the manufacturer of a product is not an insurer against all harm that might be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product. Casrell v. Altec Industries, Inc., 335 So.2d 128
(Ala. 1976); Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976); Martinez v. Dixie Carriers, Inc., 529 F.2d 457 (5th Cir. 1976)[.] In fact, as stated in General Motors Corp. v. Edwards, 482 So.2d 1176, 1183 (Ala. 1985), overruled on other grounds, Schwartz v. Volvo North America Corp., 554 So.2d 927 (Ala. 1989), the `[f]ailure of a product does not presuppose the existence of a defect.' The fact that someone was injured while using a product does not establish that the product was unreasonably dangerous when put to its intended use. Thompson v. Lee, 439 So.2d 113 (Ala. 1983); Sears, Roebuck Co. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala. 1981); Casrell v. Altec Industries, Inc., supra. Proof of an accident and injury alone is insufficient to establish fault under the AEMLD. Thompson v. Lee, supra. Rather, because the AEMLD is a fault-based cause of action, the plaintiff must prove more than the fact that an injury occurred while [the plaintiff was] using the product. Casrell v. Altec Industries, Inc., supra. Under the AEMLD, the plaintiff must affirmatively show a defect in the product. Id. In Sears, Roebuck Co. v. Haven Hills Farm, Inc., supra, at 995, this Court reviewed the proof necessary to establish a prima facie case under the AEMLD:
 "`Liability is not established merely by showing that the product failed in furthering or performing its intended use. The Plaintiff must prove that the product was substantially unaltered when used by him and must also prove causation in fact, including proof that the defect caused the injury and that the defect is traceable to the Defendant.
 "`"The fact of an injury, of course, does not establish the presence of a defect. Thus, recovery cannot be predicated on injury alone, for linking liability to injury rather than to proof that a product is defective creates absolute rather than strict liability."
 "`Edwards v. Sears, Roebuck Co., 512 F.2d 276, 289 (5th Cir. 1975). Necessarily, then, the test is met only by a showing that the product's failure of performance is causally related in fact to the product's defective condition at the time of its sale.
 "`The evidence and testimony likely to prove the defect — that which rendered the product not fit for its anticipated use — and the defect's link to the Defendant, depend upon the nature of the facts; but ordinarily, expert testimony is required because of the complex and technical nature of the commodity.'"
Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328, 1331-32
(Ala. 1991) (emphasis added in first paragraph).
 I. Failure to Preserve Verchot's Automobile
The defendants argue that the summary judgments were proper because, they say, "by Plaintiffs' failure to preserve key evidence, GM, Jim Burke, . . . Tom Williams [and Quick Oil Change] . . . [were] severely prejudiced because they [were] deprived of the ability to establish a *Page 302 
defense to Plaintiffs' claims."[2] In Capitol Chevrolet, Inc. v.Smedley, 614 So.2d 439 (Ala. 1993), the insurer, one of the plaintiffs in an action alleging an automobile design defect, had the vehicle destroyed 11 months before filing a complaint. We held that the failure of the trial court to dismiss the case was an abuse of discretion, because "[a] reasonable person could have concluded . . . that [the insurer] might sue" and that "[t]he stark result [was] that relevant evidence was irreparably lost by the actions of [the insurer]." 614 So.2d at 443.
The facts of this case are very similar to those of Smedley. In this case, the plaintiffs allowed the automobile that was the basis of their claim to be disposed of. In both cases, the disposal occurred after the plaintiffs' experts had had an opportunity to examine the automobile. Moreover, in this case, the plaintiffs' attorney accompanied the two mechanics to inspect the automobile eight days after the accident. From that fact, it is reasonable to infer that the plaintiffs contemplated filing a lawsuit. Also, in both cases, the defendants were only given photographs of the subject automobiles. Finally, in both cases, the defendants offered testimony of an engineer to illustrate that in order to defend the action it was necessary for the defendants to have the automobiles available for inspection. In the present case, General Motors attached to its motion for a summary judgment the affidavit of David Buist, a staff project engineer for General Motors, which stated in pertinent part:
 "10. I have been unable to inspect the Plaintiffs' actual automobile because the Plaintiffs failed to preserve the car after the accident. I have reviewed the photographs provided by Plaintiffs as well as the deposition testimony of the mechanics who examined the Plaintiffs' automobile after the accident. These photographs fail to provide sufficient evidence for me or anyone else to conclude, to a reasonable degree of engineering certainty, that Plaintiffs' accident was caused by a brake failure resulting from a defect."
C.R. at 113. Based upon our holding in Smedley, we likewise might conclude that the trial court properly entered the summary judgments for the defendants on the basis that Verchot's automobile was unavailable for inspection. However, we recognize our decision in Smith v. Atkinson,771 So.2d 429, 434 (Ala. 2000), in which we stated, "In Alabama, a products-liability claim relating to a defective automobile is properly disposed of on a motion for summary judgment if the automobile in question is not available and the plaintiff has no other means of provingthe alleged defect." (Emphasis added.) Therefore, we address the plaintiffs' argument concerning the sufficiency of their evidence as it relates to their "other means of proving the alleged defect."
 II. The Plaintiffs' Additional Evidence Presented to Prove a Defect
The plaintiffs argue that they presented the trial court direct evidence of a defect in the master cylinder, i.e., their own testimony concerning how the accident occurred and testimony about the circumstances of a prior similar brake failure they say the automobile had experienced; *Page 303 
photographs of the brake pedal completely depressed to the floorboard of the automobile; and testimony by the mechanics that the master cylinder was engaged and the wheels were rolling freely before they removed the master cylinder and that the wheels locked when the same master cylinder was reinstalled. The plaintiffs contend that this constituted substantial evidence that entitled them to present the issue of defectiveness to a jury. See § 12-21-12, Ala. Code 1975.
To determine whether this evidence is sufficient to warrant sending this case to a jury, we must consider what is required to prove a prima facie case under the AEMLD. See Brooks v. Colonial Chevrolet-Buick,Inc., supra. In Brooks, while this Court held that expert testimony was not always required in AEMLD cases, we recognized that "ordinarily, expert testimony is required because of the complex and technical nature of the commodity." Id., 579 So.2d at 1332 (quoting Sears, Roebuck Co.v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala. 1981)). Moreover, inBrooks, which also concerned an alleged brake failure, this Court stated:
 "[A]n automobile brake system is composed of, among other parts, [calipers,] rotors, disks, rear wheel cylinders, brake shoes, and master cylinders; it is a system composed of parts that would not be familiar to the lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective, without the assistance of expert testimony. In essence, it is a system that appears to be precisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect."
579 So.2d at 1333.
Both of the mechanics who inspected the automobile for the plaintiffs stated in deposition that they could not say that an internal defect in the master cylinder was the only factor that could have caused the brakes in Verchot's automobile to fail as they did. They acknowledged other factors, such as excessive heat, leakage of brake fluid, and contamination of brake fluid, as possible causes. The affidavit of David Buist, the staff project engineer for General Motors, provided additional reasons that could have caused the brakes to fail, reasons that would not have depended upon an internal defect in the master cylinder. They included
 "general driver error, driver pedal error, a driver's failure to understand and appropriately apply anti-lock brake systems . . ., driving with an engaged parking brake, air in the brake system, . . ., and improper repair, replacement, or maintenance of the brake system and its component parts."
C.R. at 113.
Thus, both the plaintiffs' mechanics and the defendants' engineer agreed that other events could have caused the brakes in Verchot's automobile to fail. "Proof of an accident and injury alone is insufficient to establish fault under the AEMLD." Brooks, 579 So.2d at 1332. Under these circumstances, we conclude that the plaintiffs' evidence indicating that the accident could have been attributable to an internal defect in the master cylinder is necessarily speculative and nonselective and does not constitute substantial evidence indicating that a master-cylinder defect caused the accident. See, e.g., Taylor v.General Motors Corp., 707 So.2d 198 (Ala. 1997). Such speculative evidence does not create a genuine issue of material fact as to whether the brakes failed because of a defect.
The plaintiffs also offered over *Page 304 
200 "1241 Reports"[3] of allegedly similar occurrences of brake failure that had been reported to General Motors. The plaintiffs attached these reports as an exhibit to their motion in opposition to the defendants' motion for a summary judgment. Generally, the admission of such reports is within the trial court's discretion. See GeneralMotors Corp. v. Johnston, 592 So.2d 1054 (Ala 1992) (trial court did not abuse its discretion in admitting 251 reports of similar occurrences of engine stalling and idling). The defendants argued to the trial judge, and now they argue to this Court, that these reports did not possess the requisite reliability to be considered as evidence to rebut their motions for summary judgment. The defendants directed the trial court's attention, and now they direct our attention, to Uitts v. General Motors Corp., 411 F. Supp. 1380 (E.D.Pa. 1974),aff'd, 513 F.2d 626 (3d Cir. 1975), in support of their position. InUitts, the federal district court held that 1241 Reports produced by the defendant General Motors in response to a discovery order were properly excluded from evidence when the plaintiff sought to introduce them to prove causation. Concerning the admissibility of the reports, that court stated:
 "The reports offered in the present case do not have [the required] indicia of reliability [to be admitted as business records]. They include statements by owners concerning the occurrence of an accident and reports by General Motors personnel concerning inspection of the involved vehicle, when possible. In addition, some of the reports contain letters of owners and police reports. The 1241 reports offered by plaintiffs were not the result of a continued and detailed investigation, but rather served merely as a preliminary investigation involving only the taking of a statement from the driver and if possible an inspection of the vehicle in question. The persons compiling these reports were not required to assemble all the factual data, or determine the cause or extent of the damage. They were charged with merely reporting the statements of the owners without any duty to cross examine or investigate further. The purpose of these reports was to alert defendant to possible difficulties with its product. They were not intended to commit the defendant in any way and as such were not intended to be final or amount to a complete analysis of a particular accident or its cause. . . .
". . . .
 "Proof of prior accidents or occurrences are not easily admitted into evidence, since they can often result in unfair prejudice, consumption of time and distraction of the jury to collateral matters. See
McCormick on Evidence, § 200 (2d ed. 1972); United States v. Kearney, 136 U.S. App. D.C. 328, 402 F.2d 170 (1969). The introduction of these reports into evidence in this case would have had this very result. . . . With respect to these reports plaintiff is attempting to introduce proof of accidents involving similar, not necessarily identical, vehicles. An examination of these reports reveals that some of them contain either highly inflammatory letters of owners or police reports relating to details of the accident, which would clearly be inadmissible. Plaintiffs made no attempt to limit or delete the hearsay portions of these reports. Rather, plaintiffs insisted that each of the reports *Page 305 
without exception be admitted into evidence. . . . If plaintiffs were attempting to prove the existence of a specific defect or malfunction it is clear that the admission into evidence of the occurrence of similar accidents would require a showing that those accidents were caused by the same malfunction or defect. . . . Since these reports are being introduced by plaintiffs merely to corroborate the testimony of Elva Uitts we believe the prejudicial nature of them far outweighs any probative value they might have. . . ."
Id. 411 F. Supp at 1382-83. The United States District Court in Guild v.General Motors Corp., supra, relied on Uitts in connection with that court's consideration of a similar offering of 1241 Reports. The court inGuild held that "[n]one of the 1241 reports may be received at trial as evidence of a defect because they constitute inadmissible hearsay."53 F. Supp.2d at 368.
We consider the federal court's decision in Uitts as persuasive authority on the issue whether the trial court in this case erred in entering the summary judgments for the defendants. While the trial court did not indicate what reasoning it used when it granted the defendants' motions for summary judgment, we conclude that the trial court could have properly refused to consider the 1241 Reports as evidence creating a genuine issue of material fact as to the plaintiffs' AEMLD claims.
 "We can affirm a judgment on a basis not asserted to the trial court, and we can affirm a judgment if we disagree with the reasoning of the trial court in entering the judgment, as long as the judgment itself is proper."
Progressive Specialty Ins. Co. v. Hammonds, 551 So.2d 333, 337 (Ala. 1989) (citing Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala. 1988)). See also Cove Properties, Inc. v. Walter Trent Marina, Inc.,702 So.2d 472 (Ala.Civ.App. 1997). Accordingly, the summary judgments are affirmed.
AFFIRMED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] The defendants Jim Burke Automotive, Inc., Tom Williams Buick, Inc., and Quick Oil Change, Inc., have moved to dismiss this appeal as it relates to them. They argue that they should be dismissed because their names do not appear in the notice of appeal and in certain designations in the plaintiffs' brief. We conclude that these three defendants are proper parties to this appeal. While the plaintiffs' brief is confusing in that it refers to a singular "defendant" in some contexts, and to plural "defendants" in others, and often refers to "General Motors" as the only defendant, we conclude that the plaintiffs intended to appeal the summary judgments entered for all four defendants. The plaintiffs' notice of appeal states that they are appealing from the order "granting motions for summary judgments [for] Defendants." Also, the notice of appeal describes the plaintiffs as "Dorothy Verchot, et al." and describes the defendants as "General Motors, et al."
[2] In regard to the availability of the automobile for inspection, the plaintiffs responded to interrogatories by stating:
 "The vehicle was in the custody of Sadisco located on Highway 78 in Irondale, Alabama being held on behalf of State Farm Mutual Automobile Insurance Company. To the best of Plaintiffs' knowledge, information, and belief, the vehicle was disposed of. . . ."
R. at 72.
[3] "1241 Reports are complaints received by [General Motors] from consumers concerning the failure of one of its products." Guild v.General Motors Corp., 53 F. Supp.2d 363, 368 (W.D.N.Y. 1999).