[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11478

_____

DONALD LYONS,
JILLIAN LYONS,

                                                    Plaintiffs-Appellants,

*versus*

SAEILO INC.,
d.b.a. Kahr Arms,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:21-cv-00043-LCB

_____

Before JORDAN, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Donald and Jillian Lyons sued Saeilo, Inc., d.b.a. Kahr Arms, alleging, as relevant here, a strict-liability claim based on injuries Donald sustained in a "drop-fire" incident involving a 9-milimeter Kahr CW9 semi-automatic pistol. The Lyonses contend that the gun drop-fired because of two defects, each of which entails its own theory of causation. The first is the "Inertial-Energy" defect which, they say, allows the gun to fire because when the pistol is dropped, the inertial energy disables the striker-fire safety. The second is the "Disconnector-Tab" defect, which purportedly causes a partial trigger pull because the pistol's design allows damage to occur to the disconnector tab. The district court, having excluded the Lyonses' expert testimony on the first causation theory under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), granted summary judgment to Kahr Arms on the second theory because the Lyonses hadn't proven that the Disconnector-Tab defect caused Donald's injury.

On appeal, the Lyonses argue that the district court erred because the two alleged defects worked *in tandem* to cause the gun to drop-fire. After careful review, we affirm the judgment below because the Lyonses abandoned the in-tandem, dual-defect theory, and because, in any event, the dual-defect theory fails to support a finding of causation.

# I

Donald Lyons was injured by his 9 mm Kahr CW9 semi-automatic pistol in a "drop-fire." On the day of the incident, Donald wore the pistol in a holster on his belt. His wife, Jillian Lyons, alerted him to a snake in his garage. As Donald bent down to catch the snake, his pistol allegedly slipped out of its holster, dropped to the cement floor, and fired a bullet into his body, causing severe injuries. The Lyonses sued Kahr Arms, bringing multiple claims, only one of which—a strict-liability claim based on the Alabama Extended Manufacturer's Liability Doctrine—is at issue on appeal.[1]

The Lyonses' allegation that the pistol was unreasonably dangerous rested on two causal theories, one based on what they call an "Inertial-Energy" defect and the other on a "Disconnector-Tab" defect. Discovery ensued, and the Lyonses proffered engineer Charles Powell as their expert witness. Powell performed about ten "drop tests" on an exemplar pistol to evaluate whether the inertial energy generated by the gun hitting the floor would cause a discharge. While it is uncontested that the trigger moves when the gun hits the ground, none of Powell's first ten or so tests resulted in a drop fire because the trigger didn't move enough to cause the gun to fire. During a subsequent test, Powell placed a brass particle in the cavity where the disconnector tab resides and

---

[1] The Lyonses originally raised multiple claims, but they present only the AEMLD claim on appeal. All other claims are therefore abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

manipulated the particle with a probe to get the trigger into a partially pulled position. *See* Powell Dep. at 202:4–204:6, Doc. 51-10. Having done so, Powell performed a drop test, and the pistol fired. Powell also conducted an extensive examination of Donald's gun and found that while it passed all functions tests, he observed some damage to the disconnector-tab and slide areas.

Kahr Arms moved to exclude Powell's causation testimony and for summary judgment. After conducting an extensive evidentiary hearing, the district court excluded Powell's testimony on the Inertial-Energy defect, finding that it didn't assist the trier of fact. The reason, the court said, was that the evidence—including Powell's own testimony—showed that the Inertial Energy defect didn't cause Donald's injury, since the trigger movement alone can't cause the gun to fire. But the district court admitted Powell's testimony on the Disconnector-Tab defect. The court held that although it had arisen so late in the litigation—during the motions hearing—that the Lyonses had arguably "abandoned" it, the theory had "at least a traceable, though tenuous, connection" to the case because the damage that Powell observed on Donald's gun "was highly unusual and thus not the result of wear and tear."[2] Order at 23, Doc. 70.

Despite admitting Powell's Disconnector Tab testimony, the district court granted summary judgment to Kahr Arms

---

[2] Powell theorized that the damage he observed was caused "either through contact with the slide or from foreign particle damage." Powell Dep. at 50:11–:13.

because the surviving Disconnector-Tab theory didn't show that the pistol's design was "sufficiently unsafe so as to render it defective" or susceptible to drop-firing, as required for the Lyonses' strict-liability claim. *Id.* at 33–34 (quoting *McMahon v. Yamaha Motor Corp., U.S.A.*, 95 So. 3d 769, 772 (Ala. 2012)).

The district court understood the Disconnector-Tab defect to have two alternative hypotheses, both requiring the presence of debris or foreign material in the pistol's cavity. Either (1) debris or foreign material entered the cavity where the disconnector tab sits that held the tab and trigger bar forward; or (2) damage to the disconnector tab caused by debris or foreign material created contact between the tab and the slide, holding the tab and trigger bar forward. *See id.* at 15. The court found that the Lyonses hadn't put forth any evidence that debris could get into the gun or that debris was inside Donald's pistol at the time of the incident. Moreover, the court noted that any dragging that Powell noticed in his examination of Donald's gun was slight and that the trigger returned to the full position every time that he tested it. The court thus concluded that the Disconnector-Tab theory was "pure conjecture, and a reasonable jury could not find that the . . . hypothesis caused [Donald's pistol] to drop fire." *Id.* at 38. Because the Lyonses "failed to show a *prima facie* case for products liability," all other facts were rendered immaterial, making summary judgment appropriate. *Id.* at 39.

The Lyonses appealed.

## II

On appeal, the Lyonses contend that the district court erred because it evaluated the two defects separately when, in fact, they work in tandem to show causation for the drop-fire. Before evaluating the merits of the in-tandem, dual-defect theory, we must first determine whether it was properly presented to the district court. "This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks and citations omitted). This is because examining "questions—particularly fact-bound issues—that [the] district[] court never had a chance to examine"— "would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.*

As we understand the record, the Lyonses initially raised and defended *only* the Inertial-Energy theory, which they then called the "Drop-Fire Defect." *See generally* Compl., Doc. 1; Opp'n to Kahr's Mot. for Summ. J. at 12–16, Doc. 59. It wasn't until the eleventh hour, during the motions hearing, that they introduced the Disconnector-Tab defect. *See* Tr. of Mot. Hr'g at 43:2–44:5, Doc. 72 (stating that the defect was mentioned in Charles Powell's expert report). As already noted, the district court considered treating the Disconnector-Tab theory as having been abandoned, but ultimately allowed it. *See* Order at 38.

It was never entirely clear how the Lyonses linked the Disconnector-Tab defect to Donald's injury, perhaps aside from

arguing that a trigger safety would have been a reasonable alternative design. *See* Tr. of Mot. Hr'g at 48:4–7 ("Had this pistol had a trigger safety on it, the trigger could not have moved from an inertial force, and it could not have moved from movement of the disconnector tab because the trigger safety would have prevented it."). In any event, the district court evaluated the two defects as *independent* causal theories—*i.e.*, that the Inertial-Energy defect caused Donald's injury, and, separately, that the Disconnector-Tab defect caused his injury. *See* Order at 15 ("Following his findings, Mr. Powell reported that the CW9 pistol has two design defects: (1) when the CW9 pistol gets dropped, inertial energy causes the trigger to move and the striker block to move out of the way, 'meaning the gun could . . . fire[]' ('the First Theory'); and (2) the lack of protection of the disconnector tab wherein the slide or debris in that cavity can move the tab forward, causing a partial trigger pull ('the Second Theory')." (alterations in original)).

On appeal, the Lyonses haven't contended that the district court erred in treating the two defects as operating independently of one another. Not only have the Lyonses not argued that the district court should have treated the two defects as working in tandem to support a single, combined theory of causation—they seem to have argued just the opposite. In their briefing, they asserted that the district court had misunderstood Powell as having opined that the two defects worked together. They insisted, to the contrary, that the Inertial-Energy defect *independently* caused a drop-fire. Specifically, the Lyonses cited the district court's interpretation of Powell's testimony as suggesting that for the Inertial-Energy

8                    Opinion of the Court                    23-11478

defect to cause a drop-fire, the trigger must already have been in a partially pulled position—*i.e.*, that the Disconnector-Tab theory must also have been in effect. *See* Br. of Appellant at 18. That working-together theory, they claimed, was precisely wrong: "[T]he court must have misunderstood what Powell said," they argued, because "the internal trigger safety stopped working when the gun was dropped, which allows the gun to fire. It is more likely to fire if the disconnector tab is damaged as well, which showed in his own testing of the exemplar, *but the gun can, and sometimes will, fire when it is dropped solely due to the inertial trigger pull.*" Br. of Appellant at 18–19 (emphases omitted; final emphasis added).

Indeed, the Lyonses repeatedly argued in their briefing that the two defects operated independently to cause Donald's injury. For instance, in their opening brief, the Lyonses said: "As these arguments show, substantial evidence shows that a drop-fire incident caused Mr. Lyon's injuries and that there were *two defects in the gun, either one of which would have been sufficient to cause the gun to fire.*" *Id.* at 28 (emphasis added).[3] And in their reply brief, they said:

---

[3] *See also, e.g.*, Br. of Appellant at 17 ("In this case, *one defect* is the fact that inertial energy can cause the trigger to move when the pistol is dropped to the point where the striker block safety no longer prevents the pistol from firing." (emphasis added)); *id.* at 25 ("The evidence shows that the inertial trigger pull was *a* safety defect that was *a proximate cause* of Mr. Lyons' injuries." (emphasis added)); *id.* at 29 (arguing that "the question of whether the inertial trigger pull caused the gun to fire is a question for the trier of fact" and thereby implying that the Inertial-Energy defect was itself an independent cause); *id.* at 14 (claiming in the summary of the argument section that the two defects *each*

23-11478                Opinion of the Court                9

"The pistol had *two defects*: the exposed disconnector tab and the inertial trigger pull causing the striker block safety to fail. *Either alone was sufficient to cause Mr. Lyon's* [sic] *injuries*; together, the injuries were inevitable." Reply Br. at 4 (emphasis added).

So far as we can tell, the first time that the Lyonses ever *clearly* asserted that both defects necessarily worked in tandem to cause Donald's injury was at oral argument before us:

- Counsel: "The two defects work together in tandem. So the first defect is the Drop-Fire defect whereby the trigger moves all the way to the rear. The second defect is with the disconnector tab." *See* Oral Arg. at 2:40–:50.
- Counsel: "You have to have those two defects acting together and that is what Chuck Powell testified to and testified to at the Summary Judgment hearing where he gave the plaintiffs' theory is there is two defects." *Id.* at 4:38–:51.
- Court: "You agree that you need both theories to survive to get you a jury?" Lyonses' Counsel: "Yes, yes Judge." *Id.* at 5:09–17.

To be sure, one stray reference in the Lyonses' opening brief *might* be construed as suggesting an in-tandem causal theory:

made the gun "unreasonably dangerous," not that the gun is unreasonably dangerous because of the two defects working together).

"Equally telling is the testimony of the defendant's expert, Derek Watkins.  His testimony does not preclude *the two defects* . . . from having caused the drop-fire that injured Mr. Lyons."  Br. of Appellant at 21 (emphasis added).  But "[w]e have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).  So too, there were also a few hints in the reply brief that—with some stretching—could be interpreted to advance a dual-defect theory.[4]  But that, of course, was too late.  *See id.* at 683.

To sum up:  On our read, the Lyonses failed to timely present as an issue before us that the district court misunderstood each defect as an independent but-for cause—and in fact seemed, at least initially, to argue to the contrary.  Then, late in the day—really only at oral argument before us—they realized that their case would fail unless they could somehow show that the two defects worked in tandem to cause Donald's injury.  So they switched from a "Defect A *or* Defect B" theory to a "Defect A *and* Defect B" theory.

They can't do that.  "Under the established law of this Circuit, 'issues that clearly are not designated in the initial brief

---

[4] *See, e.g.*, Reply Br. at 3 ("Even if Mr. Powell's testimony does not conclusively establish causation regarding the 'first theory,' it still is admissible as 'one piece of the puzzle that the plaintiffs endeavor to assemble before the jury.'" (citation omitted)); *id.* at 1 (argument heading stating that "THERE WAS SUBSTANTIAL EVIDENCE THAT BOTH DEFECTS CAUSED MR. LYONS' INJURIES").

ordinarily are considered abandoned.'" *Tanner Advert. Grp., L.L.C. v. Fayette Cnty.*, 451 F.3d 777, 785 (11th Cir. 2006) (citation omitted). And "[a]lthough 'briefs should be read liberally to ascertain the issues raised on appeal,'" here "there was no mention in . . . the initial brief" of the district court's alleged error in treating the two defects as independent causal theories. *Id.* at 785–86 (citation omitted); *see also Access Now*, 385 F.3d at 1330 ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). Furthermore, "[t]he argument that the plaintiffs have raised on appeal is not only new, but also one that is highly dependent on specific facts"—namely, the specific causal interaction between two highly technical alleged mechanical product defects. *Access Now*, 385 F.3d at 1331.

Of course, we have discretion to consider forfeited positions in limited circumstances, but none is present here. *Id.* at 1332. First, the dual-defect theory is not a "pure question of law," but rather involves a complicated question of fact. *Id.* Second, the Lyonses had every "opportunity to raise" their dual-defect theory in the district court. *Id.* Third, we can't see that any "interest of substantial justice is at stake" in this tort dispute. *Id.* Fourth, it can hardly be said that "the proper resolution" of the Lyonses' dual-defect argument is "beyond any doubt"; to the contrary, it involves intricate and highly technical causation issues. *Id.* And fifth, this product-liability action, while no doubt important to the parties, does not "present[] significant questions of general impact of great public concern." *Id.* Therefore, we will not address the merits of

the dual defect theory because it is raised for the first time on appeal and doesn't satisfy any of the special circumstances. *Id.* at 1335.

The upshot is that we must evaluate the Lyonses' case as they presented it to the district court, and to us initially—namely, that the two defects each independently caused Donald's injury. So understood, the case falls apart quickly because a required element of the Lyonses' strict-liability claim—proximate cause—is missing. First, the Lyonses admitted that the Inertial-Energy defect couldn't have independently caused the injury. *See* Oral Arg. at 5:09–:17; *see also* Powell Dep. at 111:12–17 ("[T]he pistol could fire if there's no safety block on the striker bar, but on this pistol, it needed an additional element of the partial pulling of the trigger by the movement of the disconnector tab to fire during a drop."). We therefore affirm the district court's exclusion of Powell's testimony regarding that defect. And second, without the Inertial-Energy defect, the Lyonses can't show that the Disconnector-Tab defect alone caused the injury because, even accepting that theory as valid, it produces at most only a partially cocked gun, not a discharge. Moreover, and in any event, as explained in the next part, the Disconnector-Tab defect fails on the merits because there isn't enough evidence to show that the disconnector tab could have been pulled forward by either debris or friction with the slide.

Because the Lyonses abandoned the in-tandem, dual-defect theory, we affirm the district court's grant of summary judgment.

### III

Even assuming that the Lyonses didn't abandon the dual-defect theory—that is, even giving them the benefit of procedural doubt, and treating the Inertial-Energy and Disconnector-Tab defects as operating in tandem—we hold that they didn't present sufficient evidence of causation to survive summary judgment.[5]

The Alabama Extended Manufacturer's Liability Doctrine is a judicially created strict-liability doctrine that premises liability on a manufacturer's sale of a defective product. *See Casrell v. Altec Indus., Inc.*, 335 So.2d 128, 130–33 (Ala. 1976); *Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 138–42 (Ala. 1976). "To establish a prima facie case against a manufacturer under the AEMLD, a plaintiff must show that (1) the defendant manufacturer sold a defective product, (2) the defect was the cause in fact of the plaintiff's injury and is traceable to the defendant, and (3) the product reached the plaintiff without substantial modification to the condition in which it was sold." *Goree v. Winnebago Indus., Inc.*, 958 F.2d 1537, 1541 (11th Cir. 1992). Mere "[p]roof of an accident and injury is not in itself sufficient to establish liability under the AEMLD." *DISA Indus., v. Bell*, 272 So. 3d 142, 149 (Ala. 2018) (quotation marks and citation omitted). When a plaintiff fails to provide "a sufficient showing to establish the existence of an element" of his claim, "there is no

---

[5] "We review an entry of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jefferson v. Sewon Am. Inc.*, 891 F.3d 911, 919 (11th Cir. 2018) (quotation marks and citation omitted).

genuine dispute regarding a material fact." *Cates v. Zeltiq Aesthetics,* 73 F.4th 1342, 1347 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 526 (2023) (mem.) (quotation marks and citation omitted).

Proof of proximate cause is vital to the Lyonses' success on their AEMLD claim. *Goree*, 958 F.2d at 1541 ("The plaintiff establishes a prima facie case as long as he provides sufficient evidence from which the jury could deduce that the product was defective, *and that his injury was caused by the defect*." (emphasis added)). Here, the Lyonses must show that the drop-fire was causally related in fact to the pistol's defective condition at the time of sale. *Verchot v. Gen. Motors Corp.*, 812 So. 2d 296, 301 (Ala. 2001). This includes "proof that the defect caused the injury and that the defect is traceable to" Kahr Arms. *Id.* (quotation marks and citation omitted).

To make out what the Alabama courts call a "prima facie" showing of causation, the Lyonses had to provide sufficient evidence to demonstrate that the Inertial-Energy and Disconnector-Tab defects combined to proximately cause Donald's injuries. They failed to do so because there is insufficient evidence in the record to show that the Disconnector Tab caused a partial trigger pull.

The Disconnector-Tab theory, as the Lyonses explain it, posits that "the disconnector tab is designed in such a position that wear and tear damage and the intrusion of foreign matter interferes with the normal tolerances that allow the disconnector tab to prevent the gun from firing." Br. of Appellant at 27. The theory entails two corollaries: first, that a partial trigger pull can occur when, as a

result of wear and tear, the disconnector tab sustains damage that permits increased contact between the tab and the slide; and second, that a partial trigger pull can occur as a result of debris, either entering the cavity where the disconnector tab sits holding the tab and trigger bar forward, or damaging the disconnector tab and creating increased contact between the tab and the slide.

We'll address the "wear and tear" and "debris" corollaries in turn.

**A**

We will start with the wear-and-tear corollary, which is based on the "fact that the disconnector tab is designed in such a position that wear and tear damage . . . interferes with the normal tolerances that allow the disconnector tab to prevent the gun from firing." *Id*. The Lyonses haven't presented sufficient evidence that wear-and-tear damage caused a partial trigger pull here.

First, there is no evidence in the record to support the contention that ordinary wear-and-tear caused the damage to Donald's gun. Although Powell claimed that he saw "microscopic markings on the slide inner surface, as well as markings on the polymer frame and disconnector tab of the trigger bar," Powell Dep. at 41:5–8, he repeatedly testified that this damage couldn't have been caused by ordinary or foreseeable use of the pistol.[6] Indeed, Powell

---

[6] *See e.g.*, Powell Dep. at 14 ("Q: Did you -- I think you said you did some microscopic examination, did you ever factor in that that could be just normal wear and tear and use of the pistol? A: No.  Q: You didn't factor that in? A: No.

16                   Opinion of the Court                   23-11478

acknowledged that the damage was highly unusual and likely the result of slide contact or interaction with foreign material. *Id.* at 48:5–8 ("There was either slide contact or a foreign body present in that location to keep that trigger rearward so that it fired when it dropped, yes."); *see also id.* at 137:4–8 ("Q:  Is it your opinion, sir, that the damage that you saw didn't occur through normal use?  A: The damage to me looked unusual because there's not normally that kind of contact between the disconnector tab and the slide.").

Which leads to the second problem:  There is also no evidence that increased slide contact caused a partial trigger pull. Powell agreed that in his extensive examination and testing of Donald's gun he has "never been able to get that frictional contact whereby the disconnector tab stays forward and partially pulls the trigger." *Id.* at 288:3–5.  Powell said that he hadn't conducted any testing to show that frictional contact with the slide alone was sufficient to cause a trigger pull. *See id.* at 286:20–288:19  Rather, he explained that "the only way I've got frictional contact to [drag the

Q: Why not?  A: Never seen a disconnector tab look like that before."); *id.* at 15 ("Q: Give me all of your support, everything, that's what we're here for today, that the microscopic markings that you saw are not related to normal wear and tear or use. A: The microscopic markings I saw are abnormal for any pistol that has a disconnector tab with a polymer frame and a steel slide, and I believe that that abnormality is a result of damage to the disconnector tab, either through contact with the slide or from foreign particle damage."); *id.* at 36–37 ("Q: Isn't it fair to say that you have no support for any opinion that the damage didn't occur through normal use? A: No, in my opinion, it did not occur through normal use.").

disconnector tab forward] was to have some debris present." *Id.* at 283:23–25.

To be sure, Powell testified that during his inspection of Donald's gun, he saw the "disconnector move slightly" based on his observation under the microscope, a fact not noted in his expert report. *Id.* at 55:2, 102:14–22. But he also testified that the gun "passed all functions tests," "the trigger functioned properly," "the disconnector functioned properly," "the striker block functioned properly," and "the trigger would fully return [to the full position] at the start of each trigger pull." *Id.* at 44:20, 45:1–3, 45:14–16. Powell never saw Donald's gun's disconnector tab dragged forward enough to drop fire. *Id.* at 54:20–24. Rather, Powell admitted that the pistol still wouldn't drop fire unless there was debris present or "conditions different than they [we]re at the time we saw the pistol." *Id.* at 288:18–19.

Therefore, the hypothesis that friction between the slide and the damaged disconnector tab could cause a partial trigger pull is unsupported by the record evidence and rests on an impermissible "inference based on speculation and conjecture." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985).

## B

Moving to the debris corollary, Powell presented two alternative hypotheses: Either (1) debris or foreign material entered the cavity where the disconnector tab sits that held the tab and trigger bar forward, causing a partial trigger pull; or (2) damage to the disconnector tab caused by debris or foreign material created contact

between the tab and the slide, holding the tab and trigger bar forward, causing a partial trigger pull. Critically, both hypotheses depend on the presence of foreign particles or debris.

The Lyonses did not argue that debris or foreign material capable of causing a partial trigger pull can collect in the pistol during ordinary use. Notably, when Powell manipulated the test pistol for his eleventh or so drop-fire experiment, he didn't add the foreign material to the gun by pushing it through an already-existing opening in the frame, but instead manually inserted the particles inside the cavity by "taking the slide off." Powell Dep. at 208:7–8. There is no evidence that particles capable of causing a partial trigger accumulated in the CW9's pistol during ordinary or foreseeable uses and Powell never got "a particle to enter the pistol and block the trigger bar through normal operation." *Id.* at 214:1–5.

Moreover, and in any event, nothing in the record suggests that such debris was in Donald's gun at the time of the incident. For example, Powell did not find foreign material or debris in their examination of Donald's gun. *Id.* at 47:12–15 ("At the time of that examination when the slide was removed, there was no longer any material present within that disconnector tab area."). Therefore, no reasonable jury could find that debris caused a partial trigger pull. And without evidence of a partial trigger pull, there is not enough evidence to show that Donald's gun drop-fired.

\* \* \*

Because the Lyonses failed to present sufficient evidence to support a finding of proximate cause, a necessary element to satisfy its prima facie burden for the AEMLD claim, we affirm the district court's grant of summary judgment.

## IV

We **AFFIRM** the judgment below because the dual-defect theory was abandoned or, in the alternative, because the Lyonses' claim fails on the merits due to a lack of evidence on proximate cause, a prima facie element of their AEMLD claim.